DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

BANK OF NOVA SCOTIA,            )
                                )
            Plaintiff,          )
                                )
      v.                        )     Civil No. 2010-29
                                )
GERALD R. ROY, BONITA M. ROY,   )
ROY'S CONSTRUCTION, INC., and   )
ARCHES OF FRENCHMAN'S BAY, LLC, )
                                )
            Defendants.         )

ATTORNEYS:

**Matthew J. Duensing, Esq.**
St. Thomas, U.S.V.I.
     *For the plaintiff Bank of Nova Scotia,*

**Robert L. King, Esq.**
St. Thomas, U.S.V.I.
     *For the defendants Gerald R. Roy, Roy's Construction, Inc., and Arches of Frenchman's Bay,*

**Alan R. Feuerstein, Esq.**
Buffalo N.Y.
     *Ford the defendant Bonita M. Roy.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

     Before the Court is the motion of the plaintiff, Bank of
Nova Scotia ("Scotiabank") for summary judgment in this matter.

**I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

     This case arises out of a series of commercial loans made
by Scotiabank to the defendants.

     On August 3, 1997, the defendants Bonita M. Roy, née
Bonfigilio ("Bonita Roy"), and Gerald R. Roy ("Gerald Roy") were

married. For the duration of their marriage, Bonita Roy and

Gerald Roy operated the defendant Roy's Construction, Inc.

("RC"), as partners on a full-time basis. A subsidiary of RC is

the defendant Arches of Frenchman's Bay, LLC ("Arches").

On March 5, 1998, Bonita Roy and Gerald Roy acquired an

ownership interest, as husband and wife, in certain real

property described as Parcel No. C-13 Estate Lovenlund (a/k/a

Lot 53 A), No. 2 Great Northside Quarter, St. Thomas, U.S.

Virgin Islands, as shown on PWD No. D9-1495-T79 (the "Lovenlund

Property"). Bonita Roy and Gerald Roy used this property as

their marital homestead.

## A.   The Credit Facility

On or about March 22, 2002, RC received and accepted an

Overdraft Commercial Credit Facility (the "Credit Facility")

from Scotiabank. The terms of the Credit Facility were

memorialized in a letter from Scotiabank to RC (the "2002

Commitment Letter"). The 2002 Commitment Letter provides that

Scotiabank will honor checks and drafts against RC's checking

accounts up to a maximum of $750,000. Any credit extended would

be at a rate of 2.25% over Scotiabank's New York Base Rate. The

total amount owed would be inclusive of the principal extended

plus interest. The terms of the Credit Facility further provided

that in the event any amount owed to Scotiabank was not paid

upon demand, Scotiabank would be entitled to interest thereon at a rate of 4% per annum over the New York Base Rate.

The 2002 Commitment Letter was signed by Scotiabank representatives; by Gerald Roy, as President and Vice President of RC; and by Gerald Roy personally. Below the word "ATTEST" and on a signature line above the words "By, Bonita M. Roy, Ass't Sect/Treasuer [*sic*]" appears a signature that reads "Bonita Roy." Below the word "GUARANTORS" and on a signature line above the name "Bonita Roy" appears a signature that reads "Bonita Roy." The initials "GR" and "BR" also appear on the first page of the commitment letter.

Repayment of the Credit Facility is secured by a mortgage executed on March 22, 2002, in the principal amount of $750,000 (the "2002 Mortgage"). The 2002 Mortgage covers the Lovenlund Property. The 2002 Mortgage is signed by Gerald Roy. On a signature line above the name "Bonita M. Roy" appears a signature that reads "Bonita Roy." The initials "GR" and "BR" appear on each page of the document. The 2002 Mortgage is signed by Sandy Groeschner and Norman P. Jones as witnesses. The 2002 Mortgage also bears the seal of Notary Public Norman P. Jones, beneath the words "The foregoing instrument was acknowledged before me this **22nd day of March, 2002**, by **Gerald R. Roy and Bonita M. Roy.**" The 2002 Mortgage was recorded at the Office of

the Recorder of Deeds for St. Thomas and St. John on March 22,
2002, as Document No. 2002001478.

Repayment of the Credit Facility is further secured by an
Unlimited Guaranty executed on October 10, 2002 (the
"Guaranty"). The Guaranty is signed by Gerald Roy. On a
signature line after the name "Bonita M. Roy" appears a
signature that reads "Bonita Roy." Each signature is witnessed
by Kimberly John-Baptiste. The initials "GR" and "BR" appear on
each page of the document, except the signature page.

Repayment of the Credit Facility is further secured by a
Uniform Commercial Code ("UCC") Financing Statement covering all
of RC's present and future assets, excluding a vehicle subject
to a lien by Banco Popular de Puerto Rico, executed on October
10, 2002 (the "UCC Lien"). The UCC Lien is recorded with the
U.S. Virgin Islands Department of Corporations and Trademarks,
file number C 606/2001. The terms of the UCC Lien are
memorialized in a Security Agreement (the "UCC Lien Agreement").
The UCC Lien Agreement was signed by Gerald Roy, as President of
RC. Below the word "Attested" and above the handwritten phrase
"Assistant Secretary/Treasurer" appears a signature that reads
"Bonita Roy."

On August 2, 2003, Scotiabank reduced the maximum of the
Credit Facility to $600,000 and reduced the interest rate to a
variable rate of 2% over Scotiabank's New York Base Rate. The

Bank of Scotia v. Roy, et al.
Civil No. 2010-29
Memorandum Opinion
Page 5

new terms of the Credit Facility were memorialized in a
commitment letter (the "2003 Commitment Letter"). The 2003
Commitment Letter was signed on August 8, 2003, by
representatives of Scotiabank, and by Gerald Roy, as President
of RC and personally. On a signature line above the words
"Bonita Roy, Secretary" appears a signature that reads "Bonita
Roy." Beneath the word "GUARANTORS," on a signature line above
the name "Bonita Roy" appears a signature that reads "Bonita
Roy." The document also bears the initials "GR" and "BR" on
every page.

On August 8, 2003, Scotiabank sent Bonita Roy a letter
advising her that the Lovenlund Property had been mortgaged to
Scotiabank as security for the Credit Facility. After the words
"Read and acknowledged by," on a signature line above the name
"Bonita Roy" appears a signature which reads "Bonita Roy." Below
the signature, after the word "Date" is the handwritten date
"8/8/03."

On or about February 10, 2006, the maximum of the Credit
Facility was increased from $600,000 to $750,000. The interest
rate remained unchanged. This was memorialized in a letter
signed by Gerald Roy on February 13, 2006 (the "2006 Commitment
Letter").

Scotiabank alleges that RC has failed to pay the principal
and interest when due on the Credit Facility and is therefore in

default. As a result, Scotiabank alleges that RC, Gerald Roy,
and Bonita Roy are indebted to Scotiabank, jointly and
severally, in the total amount of $891, 465.51 as of February
13, 2013, comprised of $602,816.90 in principal, plus
$288,648.61 in interest, with interest continuing to accrue
thereafter at the rate of $104.66 per diem.

**B.**     **The 2004 Note**

On March 22, 2004, a mortgage note was executed in favor of
Scotiabank, in the principal amount of $600,000, together with
interest at the rate of 5.5% per annum, payable in equal
consecutive monthly installments of $3,406.73 (the "2004 Note").
The 2004 Note provides that it shall become due and payable in
its entirety, without notice, by reason of default in the
payment of interest or principal when due, as well as any other
default thereunder. The 2004 Note is signed by Gerald Roy. On a
signature line above the name "Bonita M. Roy" appears a
signature that reads "Bonita Roy."

Repayment of the 2004 Note is secured by a mortgage in the
amount of $600,000 executed on March 22, 2004 (the "2004
Mortgage"). The 2004 Mortgage covers the Lovenlund Property. The
Mortgage is signed by Gerald Roy. On a signature line above the
name "Bonita M. Roy" appears a signature that reads "Bonita
Roy." The 2004 Mortgage also bears the initials "GR" and "BR" on
each page. The 2004 Mortgage is signed by Norman P. Jones and O.

Hodge as witnesses. The 2004 Mortgage also bears the seal of notary public Norman P. Jones after the words "The foregoing instrument was acknowledged before me this **22nd day of March, 2004,** by **Gerald R. Roy and Bonita M. Roy.**" The 2004 Mortgage was recorded at the Office of the Recorder of Deeds for St. Thomas and St. John on March 29, 2004, as Document No. 2004002512.

Scotiabank alleges that Bonita Roy and Gerald Roy have failed to pay interest and principal on the 2004 Note and are therefore in default. As a result, Scotiabank alleges that Bonita Roy and Gerald Roy are indebted to Scotiabank in the total amount of $855,717.14 as of February 13, 2013, comprised of $542,593.40 in principal, $112,099.29 in interest, and $163,500.63 in fees and other charges, with interest continuing to accrue thereafter at the rate of $75.50 per diem.

## C.   **The 2006 Note**

Arches has an ownership interest in certain real property described as Parcel Nos. 16-46 and 16-47 Estate Frenchman's Bay, No. 4 Frenchman's Bay Quarter, St. Thomas, U.S. Virgin Islands, as shown on PWD No. D9-4047-T87 (the "Frenchman's Bay Property").

On June 29, 2006, Gerald Roy executed a mortgage note in which he promised to repay Scotiabank the principal sum of $1,103,992, together with interest at the rate of 5.99% per annum, payable in equal consecutive monthly installments of

$6,611.89 (the "2006 Note"). The 2006 Note provides that it shall become due and payable in its entirety, without notice, by reason of default in the payment of interest or principal when due, as well as any other default thereunder.

Repayment of the 2006 Note is secured by an Unlimited Guaranty of Arches executed on June 29, 2006 (the "2006 Guaranty").

Repayment of the 2006 Note is further secured by a mortgage executed by Arches to Scotiabank on June 29, 2006, in the principal amount of $1,103,992 (the "2006 Mortgage"). The 2006 Mortgage covers the Frenchman's Bay Property. The 2006 Mortgage was recorded at the Office of the Recorder of Deeds for St. Thomas and St. John on June 30, 2006 as Document No. 2006006608.

Scotiabank alleged that Gerald Roy has failed to pay principal and interest when due on the 2006 Note and is therefore in default. As a result, Scotiabank alleges that Gerald Roy and Arches are indebted to Scotiabank in the total amount of $1,500,533.04 as of February 13, 2013, comprised of $1,048,744.28 in principal, $227,856.38 interest, and $183,419.89 in fees and other charges, with interest continuing to accrue thereafter at the rate of $160.64 per diem.

D. **Procedural Background**

In November of 2004, Bonita Roy and Gerald Roy began to live apart. In or about 2005, Bonita Roy and Gerald Roy sought a

divorce. On May 15, 2006, the Superior Court of the Virgin Islands (the "Superior Court") entered a decree granting the couple a divorce. The decree provided that the distribution of marital property would occur at a later date.

On May 21, 2007, Bonita Roy and Gerald Roy entered into a mediated settlement agreement (the "Divorce Settlement Agreement"). The Divorce Settlement provided, in pertinent part:

> With respect to the parties' properties at Parcel No. C-13 [the Lovenlund Property] and C-41 Estate Lovenlund; a) [Bonita Roy] will quitclaim her interest in the properties to [Gerald Roy] and may record a lien for $700,000 against Parcel No. C-13 and/or C-41, and against 17-31 Frenchman's Bay and Arches in a total amount of $300,000.00; b) [Bonita Roy] will be paid the amount of the lien on such property when either liened property is sold; . . . . The liens referred to in a) shall be second priority liens. [Bonita Roy] may remain at the C-13 property at the present time but . . . must later vacate the property in accordance with any contract for sale that may be entered into.

(Bonita Roy's Ex. 4, at 2.)

Scotiabank initiated this action for debt and foreclosure on March 17, 2010. In Count I of its complaint, it seeks a judgment of debt and foreclosure against Gerald Roy, Bonita Roy, and RC on the Credit Facility and the related security instruments. In Count II of its Complaint, Scotiabank seeks a judgment of debt and foreclosure against Gerald Roy and Bonita Roy on the 2004 Note and the 2004 Mortgage. In Count III of its

Complaint, Scotiabank seeks a judgment of debt and foreclosure against Arches and Gerald Roy on the 2006 note and the related security instruments.

All defendants have answered. Bonita Roy has asserted four counterclaims against Scotiabank: (1) that Scotiabank violated a provision of the Bank Holding Company Act, 12 U.S.C. § 1972(1), by employing an unlawful tying arrangement with respect to the extension of credit; (2) that Scotiabank violated 15 C.F.R. 226.15(b) an implementing regulation of the Truth In Lending Act, codified at 15 U.S.C. §§ 1601 et seq., and; (3) that Scotiabank violated 15 U.S.C. § 1640(a), another provision of the Truth In Lending Act; and (4) that Scotiabank has engaged in consumer fraud and deceptive trade practices in violation of V.I. CODE ANN. tit. 12A, §§ 301-335. Bonita Roy has also asserted a cross-claim against Gerald Roy for breach of the Divorce Settlement Agreement.

On April 28, 2011, the Superior Court issued an Amended Decree of Divorce (the "Amended Decree of Divorce"). The Amended Decree of Divorce ordered that the "Mediated Settlement Agreement dated May 21, 2007 shall be incorporated by reference into the Decree of Divorce . . . ." (Bonita Roy's Ex. 5, at 2.) The Superior Court's Order provided that it was dated *nunc pro tunc* to May 15, 2006.

Case: 3:10-cv-00029-CVG-GWC   Document #: 132   Filed: 02/25/13   Page 11 of 43
Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 11

On May 20, 2011, Scotiabank moved for summary judgment (the "Initial Motion for Summary Judgment"). The Court denied that motion with respect to Counts One and Two of its Complaint as to Bonita Roy on November 14, 2011.

The next day, at a hearing of Scotiabank's motion for summary judgment, the Court orally granted the motion with respect to Bonita Roy as to her counterclaims. The Court then requested the parties submit briefs addressing whether the Court had jurisdiction over Bonita Roy's cross-claim against Gerald Roy.

The remainder of Scotiabank's motion for summary judgment was left undecided because shortly before the hearing, Gerald Roy entered bankruptcy. The Court accordingly stayed this matter.

On July 12, 2012, the bankruptcy division of this Court ordered that the automatic stay be lifted. Scotiabank now renews its motion for summary judgment (the "Renewed Motion for Summary Judgment") on its claims and on Bonita Roy's counterclaims.

## II.  <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Case: 3:10-cv-00029-CVG-GWC   Document #: 132   Filed: 02/25/13   Page 12 of 43
Bank of Nova Scotia v. Ross
Civil No. 2010-29
Memorandum Opinion
Page 12

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

### A.   <u>The Credit Facility</u>

In support of its motion for summary judgment on the Credit Facility, Scotiabank has submitted copies of the 2002 Commitment

Letter; the 2002 Mortgage; the 2002 Guaranty; the UCC Lien Agreement; and the 2003 Commitment Letter.

The 2002 Commitment Letter outlines the terms of the Credit Facility. It states that Scotiabank will provide RC "with an overdraft facility . . . in the amount of $750,000." Pl's Ex. 3. It further states that Scotiabank "shall accrue interest against the outstanding overdraft balance on your account on a daily basis at two and one-quarter percent (2.25%) over our New York Base rate." *Id.*

Scotiabank also relies on the affidavit of Daniel Rogers ("Rogers"), Manager of the Cross Border (Rep)Site, Centralized Retail Collections Unit of Scotiabank. Rogers avers that he is familiar with the various loans made to the defendants in this case. Rogers further avers that:

> On or about March 22, 2002, [RC] received and accepted [the Credit Facility] under which Scotiabank agreed to honor checks and drafts against RC's checking accounts up to a maximum of SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000), including principal and interest amounts, together with a variable interest rate of 2.25% over Scotiabank's New York Base Rate . . . with other charges as stated in the [2002 Commitment Letter].

(Aff. of Daniel Rogers ¶ 5.)

The 2002 Mortgage states that "[t]he Mortgagor acknowledges [RC] being indebted to the Mortgagee in the sum of **SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000)**." Pl.'s Ex. 4, at

1. The 2002 Mortgage also states that the property mortgaged is

the Lovenlund Property. Rogers, in his affidavit, also avers

that:

> Repayment of the [Credit Facility], as well
> as repayment of any and all sums that Gerald
> Roy and Bonita Roy may at any time and for
> any reason may become indebted to
> Scotiabank, is secured by [the 2002 Mortgage
> covering the Lovenlund Property] . . . .

(Aff. of Daniel Rogers ¶ 6.) The 2002 Mortgage is signed by

Gerald Roy and bears what appears to be the signature of

Bonita Roy.

The 2002 Guaranty states that "[u]pon default in payment of

any sum owing by [RC] to the Bank at any time, the Bank may

treat all guaranteed liabilities as due and payable and may

forthwith collect from the Guarantor the total amount hereby

guaranteed." Pl.'s Ex. 6, at 1. The 2002 Guaranty further states

that "the liability of the undersigned hereunder [is] limited to

the sum of UNLIMITED dollars." *Id.* The 2002 Guaranty is signed

by Gerald Roy and bears what appears to be the signature of

Bonita Roy. Rogers, in his affidavit, also avers that repayment

of the Credit Facility is secured by the 2002 Guaranty. (Aff. of

Rogers ¶ 7.)

The UCC Lien Agreement lists as collateral for the Credit

Facility all of RC's accounts, chattel paper, equipment (with

the exception of a vehicle subject to a lien by Banco Popular de

Case: 3:10-cv-00029-CVG-GWC   Document #: 132   Filed: 02/25/13   Page 15 of 43
Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 15

Puerto Rico), fixtures, inventory, goods, instruments, general intangibles, investment property, written instruments, deposit accounts, letter-of-credit rights, tort claims, payment intangibles, and all books and records. (Pl.'s Ex. 6, Schedule A to UCC Lien Agreement, at 1-2.) Rogers also avers the repayment of the Credit Facility is secured by the UCC Lien. (Aff. of Rogers ¶ 8.)

The 2003 Commitment Letter states that the maximum of the Credit Facility is reduced to $600,000. The interest rate is reduced to 2% over Scotiabank's New York Base Rate. The letter also lists the 2002 Mortgage, the 2002 Guaranty, and the UCC Lien Agreement as security for the Credit Facility. Rogers also avers that the maximum of the Credit facility was reduced to $600,000, and interest was reduced to 2% over Scotiabank's New York Base Rate. (Aff. of Rogers ¶¶ 7-8.)

The 2006 Commitment letter states that the maximum of the Credit Facility was increased to $750,000. The interest rate was to remain the same. Rogers also avers that on or about February 10, 2006, the maximum of the Credit Facility was increased to $750,000, with no change in interest rate. (Aff. of Rogers ¶ 13.)

Lastly, Scotiabank relies on the Affidavit of Rogers in support of its claim that Gerald Roy, Bonita Roy, and RC are in default on the Credit Facility. Rogers avers that

> Despite demand, [Gerald Roy] and [Bonita
> Roy] have failed to comply with the terms
> and conditions of the 2002 Mortgage and the
> 2002 Guaranty and are in default under those
> instruments for failing to pay principal and
> interest when due.
>
> . . . .
>
> . . . Defendants [RC], [Gerald Roy] and
> [Bonita Roy] are indebted to Scotiabank,
> jointly and severally, on the [Credit
> Facility] and the 2002 Guaranty in the total
> amount of $821,238.65 as of April 14, 2011,
> comprised of $602,816.90 in principal,
> $218,421.75 in interest, with interest
> continuing to accrue thereafter at the rate
> of $104.66 per diem.

(Aff. of Rogers ¶¶ 17, 19.)

This competent evidence is sufficient to satisfy
Scotiabank's burden to show there is no genuine issue of
material fact with respect to its debt claim on the Credit
Facility. The burden thus shifts to the defendants to establish
specific facts showing there is a genuine issue for trial.

### 1.  RC and Gerald Roy

RC offers no evidence to dispute that it is indebted to
Scotiabank under the Credit Facility. RC likewise offers no
evidence to dispute that it is in default under the terms of the
Credit Facility. RC and Gerald Roy offer no evidence to dispute
that the Credit Facility was secured by the 2002 Mortgage
covering the Lovenlund property, the 2002 Guaranty, and the UCC
Lien.

Instead, RC and Gerald Roy assert the affirmative defense of "unclean hands." Relying on Bonita Roy's counterclaims, RC and Gerald Roy argue that Scotiabank is not entitled to equitable relief. Specifically, they claim Scotiabank has unclean hands because it violated the Bank Holding Company Act (the "BHCA"), the Truth In Lending Act (the "TILA"), and the Virgin Islands Consumer Fraud and Deceptive Trade Practices Act (the "CFDTPA"). For the reasons stated more fully in the subsequent discussion of Bonita Roy's counterclaims, the Court finds no legal support for a claim that Scotiabank violated the BHCA, the TILA, or the CFDTPA.

At the summary judgment stage, once the movant has satisfied its burden to show it is entitled to judgment as a matter of law, the non-moving party must put forward competent evidence establishing specific facts showing there is a genuine issue for trial. *See Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). Here, RC and Roy have adduced no evidence showing any dispute of material fact and rely solely on their defense of unclean hands. Thus, summary judgment on the debt owed by RC and Gerald Roy under the Credit Facility is appropriate.

## 2.  **Bonita Roy**

Bonita Roy contends there is a genuine issue of material fact as to whether she did agree to or was aware of the Credit

Facility, the 2002 Mortgage, the 2002 Guaranty, or the UCC Lien

Agreement. In her affidavit, she avers:

> 16. . . . I have reviewed the signatures presented by Plaintiff [Scotiabank], the [2002 Mortgage], the [Credit Facility], the [2002 Guaranty], the [2004 Note], the [2004 Mortgage], nor [*sic*] the [UCC Lien] with regard to the [Lovenlund Property], and your affiant hereby advises and avers to the Court that said mortgages and notes are not signed by me.
>
> 17. It is the personal belief of your affiant that Defendant [Gerald Roy], or persons otherwise under his control and influence, have forged my name on the previously stated documents that are currently in dispute in this proceeding. Your affiant firmly believes that Defendant [Gerald Roy], or persons under his control, forged your affiant's signature in order to utilize my name and credit to maintain the solvency of his businesses.

(Aff. of Bonita Roy ¶¶ 16–17.)

Title Eleven A, Section 308 of the Virgin Islands Code

("section 308") provides, in pertinent part:

> If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

V.I. CODE ANN. tit 11A, § 308(a). As there is no assertion that

Bonita Roy is dead or incompetent, her signature on the relevant

documents is presumptively valid.

Bank of Nova Scotia v. Ross
Civil No. 2010-29
Memorandum Opinion
Page 19

Bonita Roy argues that these allegations of fraud or forgery are sufficient to create a genuine dispute of material fact. In support of this position, she relies on *Ingersoll-Rand Financial Corp. v. Anderson*, 921 F.2d 497 (3d Cir. 1990).

In that case, a defendant claimed that his signature on a promissory note was forged. *Id.* at 499. Although the defendant admitted to signing some promissory note, he denied signing the note offered into evidence by the plaintiff noteholder. *Id.* at 501. The defendant unequivocally stated that his signature on the note at issue was a forgery in his answer, affidavits, and at an evidentiary hearing. *Id.* at 500. Nonetheless, the District Court granted summary judgment in favor of the plaintiff noteholder and against the defendant. *Id.* at 499. The Court of Appeals for the Third Circuit reversed, holding that the defendant's claim of forgery created a genuine issue of material fact. *Id.* at 501. The Third Circuit reasoned that "[a]lthough [the plaintiff noteholder] now has the benefit of the presumption in [the New Jersey Statute] that the signature is genuine, this presumption cannot, on a summary judgment motion, overcome [the defendant's] affidavits that deny his signature." *Id.* at 501.

Here, in her answer, Bonita Roy unequivocally denies that her signature on the 2002 Mortgage, the 2002 Guaranty, and the UCC Lien Agreement are genuine. Bonita Roy has also submitted an

Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 20

affidavit in which she unequivocally denies having signed these
documents and states that the signatures that appear on them in
her name are forged. Thus, as in *Ingersoll-Rand*, the defendant
has, from the onset of the litigation, unequivocally disputed
the genuineness of her signatures. Although Scotiabank is
entitled to a presumption of the signatures' validity, this is
not sufficient, on a summary judgment motion, to overcome Bonita
Roy's affidavit claiming forgery. *See Ingersoll-Rand*, 921 F.2d
at 501.

**B.    The 2004 Note**

In support of its motion for summary judgment on the 2004
Note, Scotiabank relies on the 2004 Note, the 2004 Mortgage, and
the Affidavit of Rogers.

The 2004 Note states that "the undersigned . . . promise[]
to pay **THE BANK OF NOVA SCOTIA . . .** the principal sum
of . . . **$600,000 . . . ,** with interest on the unpaid principal
balance from the date of this Note, until paid, at the rate
of . . . **5.50%)** per annum. Principal and interest shall be
payable . . in consecutive monthly installments of **. . .**
**$3,406.73 . . . ."** (Pl.'s Ex. 13, at 1.) The document is signed
by Gerald Roy and bears what appears to be the signature of
Bonita Roy. Rogers also avers that Gerald Roy and Bonita Roy
executed the 2004 Note for $600,000, at an interest rate of 5.5%
per annum.

The 2004 Mortgage states that "[t]he Mortgagor[s]
aknowledge[] being indebted to [Scotiabank] in the sum
of . . . **$600,000 . . . .**" (Pl.'s Ex. 14, at 1.) The 2004
Mortgage states that it covers the Lovenlund Property. The 2004
Mortgage is signed by Gerald Roy and bears what appears to be
the signature of Bonita Roy. Rogers also avers that

> The repayment of the indebtedness of [Gerald
> Roy] and [Bonita Roy] to Scotiabank,
> including any and all sums that they may at
> any time and for any reason may become
> indebted to Scotiabank, is secured by a
> Second Priority Mortgage executed on March
> 22, 2004 (the "2004 Mortgage"), in the
> principal amount of $600,000 . . . . The
> 2004 Mortgage covers the Lovelund Property.

(Aff. of Rogers ¶ 21.)

Lastly, Rogers avers that:

> [Gerald Roy] and [Bonita Roy] have failed to
> comply with the terms and conditions of the
> 2004 Note and the 2004 Mortgage and are in
> default for failing to pay principal and
> interest when due.
>
> . . . Defendants [Gerald Roy] and [Bonita
> Roy] are indebted to Scotiabank on the 2004
> Note in the total amount of $750,525.51 as
> of April 14, 2011, comprised of $542,593.40
> in principal, $79,041.80 in interest,
> $128,890.31 in fees and other charges, with
> interest continuing to accrue thereafter at
> the rate of $101.11 per diem.

(Aff. of Rogers ¶¶ 23, 25.)

This competent evidence is sufficient to satisfy

Scotiabank's burden to show there is no genuine issue of

Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 22

material fact with respect to its debt claim on the 2004 Note. The burden thus shifts to the defendants liable on the 2004 Note to establish specific facts showing there is a genuine issue for trial.

### 1. Gerald Roy

Gerald Roy concedes that he is indebted to Scotiabank under the 2004 Note. Gerald Roy also concedes that he is default under the terms of this note. Gerald Roy concedes that this Note was secured by the 2004 Mortgage.

Gerald Roy does, however, dispute Scotiabank's calculation of the amount owed. In his opposition, he states:

> [Scotiabank] has utilized creative mathematics in its favor and to the absolute detriment of Defendants by alleging that the Defendants are indebted to [Scotiabank] for "fees and other charges" under the 2004 Note in the amount of $128,809.31 . . . . Defendants are entitled to a full accounting through the master transaction histories and general ledgers for the account to determine the rightful amounts owed. Further, the principal balance claimed as owed is not owed and is in the wrong amount.

(Gerald Roy's Opp. to Mot. for Summ J. 12).

Aside from this statement, Gerald Roy does not identify the basis for his disagreement with Scotiabank's calculation of the amount owed on the 2004 Note. He does not explain whether the error stems from improper calculation of interest, a mathematical error in computing the principal balance, or some

combination thereof. He does not identify with any precision
when or where the error occurred. He offers no suggestion as to
what the correct amount owed might be.

It is well-settled that, to survive summary judgment, the
non-moving party "may not rest upon mere allegations, general
denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*,
934 F.2d 497, 500 (3d Cir. 1991). Gerald Roy's general denial of
Scotiabank's claim that he owes $128,809.31, and his demand for
a "full accounting," is simply not sufficient to show there is a
genuine dispute of material fact. On the record currently before
the Court, summary judgment in favor of Scotiabank is
appropriate.

### 2.   **Bonita Roy**

As with the 2002 Note, the 2002 Guaranty, and the 2002 UCC
Lien Agreement, Bonita Roy denies having signed the 2004 Note
and the 2004 Mortgage. In her answer, she claims that what
purports to be her signature on these documents are forgeries.
In her affidavit, she states that "the 2004 Mortgage Note, [and]
the Second Priority Mortgage [the "2004 Mortgage"] . . . are not
signed by me." (Aff. of Bonita Roy ¶ 16.) She further avers that
"[Gerald Roy], or persons under his control, forged your
affiant's signature in order to utilize my name and credit in an
effort to maintain the solvency of his businesses." (Aff. of
Bonita Roy ¶ 17.)

Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 24

A party's signature on a document is presumptively valid. However, as discussed above, this presumption may be overcome at the summary-judgment stage by that party's unequivocal denial of that signature's validity. *See Ingersoll-Rand*, 921 F.2d at 499. Bonita Roy unequivocally denies having signed any of the documents relating to the 2002 Note. Thus, Bonita Roy's allegations of fraud or forgery, supported by her affidavit, are sufficient to create a genuine issue of material fact.

**C.  The 2006 Note**

In support of its motion for summary judgment on the 2006 Note, Scotiabank relies on copies of the 2006 Note, the 2006 Mortgage, and the Affidavit of Rogers.

The 2006 Note states that

> the undersigned . . . promise(s) to pay [Scotiabank] . . . the principal sum of **. . . $1,103,992.00 . . .** with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of **5.99%** per annum . . . . Principal and interest shall be payable . . . in consecutive monthly installments of . . . **$6,611.89.**

(Pl.'s Ex. 15, at 1.) The 2006 Note is signed by Gerald Roy. Rogers also avers that Gerald Roy executed the 2006 Note for $1,103,992.00, with interest at 5.99% per annum. (Aff. of Rogers ¶ 26.)

The 2006 Mortgage states that "[t]he Mortgagor acknowledges **GERALD ROY** . . . being indebted to [Scotiabank] in the sum

of . . . **$1,103,992.00** . . . ." (Pl.'s Ex. 16.) The 2006

Mortgage states that it covers the Frenchman's Bay Property. It

is signed by Gerald Roy as a member of Arches. Rogers also avers

that repayment of the 2006 Note was secured by the 2006

Mortgage. (Aff. of Rogers ¶ 29.)

Rogers also avers that repayment of the 2006 Note was

secured by an unlimited Guaranty of Arches, executed on June 29,

2006. (Aff. of Rogers ¶ 28.)

Rogers further avers that Gerald Roy and Arches are in

default on the 2006 Note:

> [Gerald Roy] has failed to comply with the
> terms and conditions of the 2006 Note and is
> in default for failing to pay principal and
> interest when due.
>
> . . . .
>
> . . . Defendants [Gerald Roy] and Arches are
> indebted to Scotiabank on the 2006 Note and
> the [2006 Guaranty] in the total amount of
> $1,309,740.73 as of April 14, 2011,
> comprised of $1,048,744.28 in principal,
> $133,829.84 in interest, $127,166.61 in fees
> and other charges, with interest continuing
> to accrue thereafter at the rate of $194.61
> per diem.

Aff. of Daniel Rogers, ¶¶ 30, 32. This is sufficient to satisfy

Scotiabank's burden to show there is no genuine issue of

material fact with respect to its debt and foreclosure claim on

the 2006 Note. The burden thus shifts to the defendants liable

on the 2006 Note to establish specific facts showing there is a genuine issue for trial.

With respect to the 2006 Note, Gerald Roy concedes that he is indebted to Scotiabank on the 2006 Note. Gerald Roy concedes he is in default on the 2006 Note. Gerald Roy concedes that the 2006 Note is secured by the 2006 Guaranty and the 2006 Mortgage.

Arches is not a party to the 2006 Note. However, Arches concedes that it is liable on the 2006 Note as a guarantor, pursuant to the 2006 Guaranty. (Aff. of Rogers ¶ 28.) Arches likewise concedes that the 2006 Note is secured by the 2006 Mortgage, covering the Frenchman's Bay Property, which it owns.

Gerald Roy and Arches do dispute Scotiabank's calculation of the amount owed. Gerald Roy and Arches assert that "Scotiabank utilized creative mathematics . . . by alleging that the Defendants are indebted . . . in an amount equal to $127,166.61 for 'fees and other charges under the 2006 Note.' " (Gerald Roy & Arches Opp. to Mot. for Summ J. 12). Aside from this statement, neither Gerald Roy nor Arches identifies the basis for their disagreement with Scotiabank's calculation of the amount owed on the 2006 Note. Gerald Roy and Arches do not explain whether the error stems from improper calculation of interest, a mathematical error in computing the principal balance, or some combination thereof. Gerald Roy and Arches do not identify with any precision when or where the error

occurred. They offer no suggestion as to what the correct amount owed might be.

It is well-settled that, to survive summary judgment, the non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). Gerald Roy's general denial of Scotiabank's claim that he owes $127,166.61, and his demand for a "full accounting," is simply not sufficient to show there is a genuine dispute of material fact. On the record currently before the Court, summary judgment in favor of Scotiabank on its claim for debt is appropriate, and the 2006 Mortgage will be foreclosed.

## D. **Bonita Roy's Counterclaims**

As discussed above, at the November 15, 2011, Hearing, the Court orally granted summary judgment in favor of Scotiabank and against Bonita Roy on all of her counterclaims. This memorializes that oral ruling.

### 1. Violation of 12 U.S.C. § 1972(1)

In the first of her counterclaims, Bonita Roy asserts that Scotiabank violated 12 U.S.C. § 1972(1), a provision of the Bank Holding Company Act ("BHCA"), by "inducing and attempting to induce [her] from [*sic*] entering into the credit transactions as alleged in Plaintiff's Complaint." Def. Bonita Roy's Answer with Cross-cls. & Countercls., at 15.

Title Twelve, Section 1972(1) ("section 1972(1)") of the
United States Code provides, in pertinent part:

> A bank shall not in any manner extend
> credit, lease or sell property of any kind,
> or furnish any service, or fix or vary the
> consideration for any of the foregoing, on
> the condition or requirement--
>
> (A) that the customer shall obtain some
> additional credit, property, or service from
> such bank other than a loan, discount,
> deposit, or trust service;
>
> . . .
>
> (C) that the customer provide some
> additional credit, property, or service to
> such bank, other than those related to and
> usually provided in connection with a loan,
> discount, deposit, or trust service . . . .

12 U.S.C. § 1972(1).

The BHCA was intended "to prohibit anti-competitive
practices by banks which require bank customers to accept or
provide some other service or product or refrain from dealing
with other parties in order to obtain the bank product or
service they desire." *S & N Equip. Co. v. Casa Grande Cotton
Fin.*, 97 F.3d 337, 343 (9th Cir. 1996) (quoting *Flintridge
Station Ass'n v. Am. Fletcher Mortg. Co.*, 761 F.2d 434, 437 (7th
Cir. 1985) (quoting S. Rᴇᴘ. Nᴏ. 1084, (1970), *reprinted in* 1970
U.S.C.C.A.N. 5519, 5535)). It was not intended to interfere with
traditional banking practices designed to protect banks'
investments. *See, e.g., Swerdloff v. Miami Nat'l Bank*, 584 F.2d

Baalman v. Wesley College
Civil No. 2010-29
Memorandum Opinion
Page 29

54, 58 (5th Cir. 1978); *Clark v. United Bank of Denver Nat'l Ass'n*, 480 F.2d 235, 238 (10th Cir.), *cert. denied*, 414 U.S. 1004 (1973); *Sterling Coal Co. v. United Am. Bank*, 470 F. Supp. 964, 965 (E.D. Tenn. 1979). "A bank's attempt to protect its investment by requiring that a borrower purchase or provide something usually provided in connection with a loan does not violate the BHCA." *Nordic Bank PLC v. Trend Grp.*, 619 F. Supp. 542, 556 (S.D.N.Y. 1985).

In *Clark v. United Bank of Denver Nat'l Ass'n*, 480 F.2d 235 (10th Cir.), *cert. denied*, 414 U.S. 1004 (1973), the defendant bank required the plaintiffs to maintain an interest-free deposit of $1,500,000 in the event a loan was made. *Id.* at 238. The plaintiffs argued that this constituted a violation of the BHCA. However, the Court of Appeals for the Tenth Circuit disagreed. The Court of Appeals noted that "[t]he legislative history [of the BHCA] indicates that [section 1972] was not intended to interfere with the conduct of traditional banking practices. Included in these excepted banking practices was the maintenance of traditional correspondent relationships." *Id.* Thus, the Court held that the requirement of the interest-free deposit was not "a prohibited tying arrangement." *Id.*

In *Nordic Bank PLC v. Trend Group*, 619 F. Supp. 542 (S.D.N.Y. 1985), the Trend Group claimed that Nordic Bank violated section 1972(1). In that case, Nordic Bank conditioned

an extension of credit on the Trend Group putting up at least
$750,000 in new collateral. Nordic Bank further required that
the total value of the collateral be equal to 120% of the value
of any outstanding loans. *Id.* at 553. The District Court
dismissed these claims, holding that they "constituted
traditional banking practices that are exempt from the BHCA's
anti-tying provisions." *Id.* at 557.

Similarly, in *Sterling Coal Co. v. United American Bank*,
470 F. Supp. 964 (E.D. Tenn. 1979), a bank required a borrower
to, among other things, assume the personal liability of its two
sole stockholders. *Id.* at 965. The District Court held that this
did not amount to a violation of section 1972(1) as it was well
within the scope of traditional banking practices: "The Court
would be surprised indeed if a bank were to loan large sums to a
new, closely held corporation . . . without requiring a
corporate guarantee of the indebtedness of its sole
stockholders." *Id.*

Here, in support of its motion for summary judgment on this
counterclaim, Scotiabank relies on the 2003 Commitment Letter.
The 2003 Commitment Letter provides that repayment of the Credit
Facility was secured by the 2002 Guaranty, the UCC Lien, and the
2002 Mortgage. Scotiabank also relies on the affidavit of
Rogers, which states:

> 6. Repayment of the [Credit Facility], as
> well as repayment of any and all sums that
> Gerald Roy and Bonita Roy may at any time
> and for any reason may become indebted to
> Scotiabank, is secured by [the 2002 Mortgage
> covering the Lovenlund Property] . . . .
>
> 7. Repayment of the [Credit Facility] is
> secured by [the 2002 Guaranty].
>
> 8. Repayment of the [Credit Facility] is
> secured by a perfected [UCC Lien] covering
> all of RC's present and future assets,
> except for a vehicle subject to a lien by
> Banco Popular de Puerto Rico.

Aff. of Daniel Rogers, ¶¶ 6-8. The requirement to provide

collateral or guarantees as a condition of obtaining a loan is

well within the scope of the traditional-banking-practices

exception to section 1972. *Sterling Coal*, 470 F. Supp. at 965.

Thus, Scotiabank has satisfied its burden to show that there is

no genuine issue of material fact as to Bonita Roy's first

counterclaim.

The burden now shifts to Bonita Roy to establish specific

facts showing that there is a triable issue. In her affidavit,

Bonita Roy states:

> You [*sic*] affiant never would have signed
> the subject mortgages and notes that allows
> for my marital interest in property to be
> wiped out or diluted by [Scotiabank].

Aff. of Def. Bonita Roy, ¶ 18. This statement alone does not

indicate or suggest that Scotiabank at any time required Bonita

Roy to purchase or provide any "additional credit, property, or

Case 3:10-cv-00029-CVG-GWC   Document #: 132   Filed: 02/25/13   Page 32 of 43
Bank of Nova Scotia v. Roy, et al.
Civil No. 2010-29
Memorandum Opinion
Page 32

service" in exchange for the loans at issue. Without more,

Bonita Roy cannot show that there is a genuine dispute of

material fact as to whether Scotiabank violated section 1972(1).

### 2.   Violations of the Truth in Lending Act: 15 U.S.C. §§ 1640(a), and 15 C.F.R. 226.15(b)

In her Second and Third Counterclaims, Bonita Roy alleges

that Scotiabank violated various provisions of the Truth in

Lending Act (the "TILA"), codified at 15 U.S.C. §§ 1601 et seq.,

with its implementing regulations in 12 C.F.R. 226.15 et seq.

In her Second Counterclaim, Bonita Roy alleges that "with

the transactions alleged to have been conducted between

[Scotiabank] and [Bonita Roy] herein, Plaintiff has violated the

Truth In Lending Act, Title 15 U.S.C. Sec. 1601"[1] and that

Scotiabank "has also violated [12] C.F.R. Sec. 226.15(b) . . .

."[2] Def. Bonita Roy's Answer with Cross-cls. & Countercls., at

16.

---

[1] 15 U.S.C. § 1601 is entitled "Congressional findings and declaration of purpose." It describes the purpose of the Bank Holding Company Act.

[2] 12 C.F.R. 226.15(b) provides, in pertinent part:

> In any transaction or occurrence subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:

Bank of N.S. v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 33

In her Third Counterclaim, Bonita Roy alleges that
Scotiabank violated 15 U.S.C. § 1640(a) by "failing to properly
notify [her], [Scotiabank's] alleged customer, of reductions in
alleged evaluations of property and requiring [her] to seek
reinstatement by paying additional monies in order to shore up
the credit line issued by [Scotiabank]." *Id.*

The TILA applies "only to consumer credit transactions."
*St. Hill v. Tribeca Lending Corp.*, 403 Fed. App'x 717, 720 (3d
Cir. 2010). "Under the TILA, consumer credit means credit
'offered or extended' to a consumer 'primarily for personal,

---

(1)   The retention or acquisition of a
      security interest in the consumer's
      principal dwelling.

(2)   The consumer's right to rescind, as
      described in paragraph (a)(1) of this
      section.

(3)   How to exercise the right to rescind,
      with a form for that purpose, designating
      the address of the creditor's place of
      business.

(4)   The effects of rescission, as described in
      paragraph (d) of this section.

(5)   The date the rescission period expires.

12. C.F.R. 226.15(a) provides, in pertinent part:

in a credit plan in which a security interest is or
will be retained or acquired in a consumer's
principal dwelling, each consumer whose ownership
interest is or will be subject to the security
interest shall have the right to rescind: each credit
extension made under the plan; the plan when the plan
is opened; a security interest when added or
increased to secure an existing plan; and the
increase when a credit limit on the plan is
increased.

family, or household purposes.' " *Id.* (citing 15 U.S.C.
§ 1602(h); 12 C.F.R. 226.2(12). "The adjective 'consumer,' used
with reference to a credit transaction, characterizes the
transaction as one in which the party to whom credit is offered
or extended is a natural person . . . ." 15 U.S.C. § 1602(i).

In determining whether a transaction was personal or
commercial, a court must look to the "transaction as a whole."
*Gombosi v. Carteret Mortg. Corp.*, 894 F. Supp. 176, 181 (E.D.Pa.
1995). "Even if a transaction has some personal purpose, the
TILA does not necessarily apply." *St. Hill*, 403 Fed. App'x at
720 (citing *Quinn v. A.I. Credit Corp.*, 615 F. Supp. 151, 154
(E.D.Pa. 1985)). Moreover, "simply because the loan is secured
by a family home does not mean that the loan was primarily
personal." *Id.* (citing *Sherrill v. Verde Capital Corp.*, 719 F.2d
364, 367 (5th Cir. 1983); *Bokros v. Assocs. Fin., Inc.*, 607 F.
Supp. 869, 872 (N.D. Ill. 1984); *In re DiPietro*, 135 B.R. 773,
777 (Bankr. E.D.Pa. 1992).

On its face, Bonita Roy's Second and Third Counterclaims
appear to suffer from threshold deficiencies. In its motion for
summary judgment, Scotiabank directs the Court's attention to
the 2002 Commitment Letter, the 2003 Commitment Letter, and the
2006 Commitment Letter. These documents all list RC as the
borrower. Scotiabank also relies on the affidavit of Rogers,
which states:

Case: 3:10-cv-00029-CVG-GWC Document #: 132 Filed: 02/25/13 Page 35 of 43
Bank of Nova Scotia v. Roy, et al.
Civil No. 2010-29
Memorandum Opinion
Page 35

> . . . On or about March 22, 2002, Roy's Construction
> ("RC") received and accepted [the Credit Facility]
> under which Scotiabank agreed to honor checks and
> drafts against RC's checking accounts up to a maximum
> of SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS
> ($750,000), including principal and interest amounts,
> together with a variable interest rate of 2.25% over
> Scotiabank's New York Base Rate . . . with other
> charges as state in the [2002 Commitment Letter].

Aff. of Daniel Rogers, ¶ 5. Based on this evidence, it is

apparent that the Credit Facility was not offered to a natural

person. That deficiency is ordinarily fatal to a TILA claim.

*See, e.g., St. Hill*, 403 Fed. App'x at 720.

With respect to the 2004 Note, Scotiabank relies on the

affidavit of Rogers, which states:

> On or about March 22, 2004, [Gerald Roy] and [Bonita
> Roy] executed a Mortgage Note (the "2004 Note") in
> which they promised to repay Scotiabank the principal
> sum of SIX HUNDRED THOUSAND AND 00/100 DOLLARS
> ($600,000), together with interest at the rate of 5.5%
> per annum, in equal consecutive monthly installments
> of THREE THOUSAND FOUR HUNDRED SIX AND 73/100 DOLLARS
> ($3,406.73).
>
> . . . The funds from the 2004 Note were to be used for
> furthering the businesses of [Gerald Roy] and [Bonita
> Roy].

Aff. of Daniel Rogers, ¶¶ 20-21.

TILA only applies credit extended for personal

expenditures. Based on this evidence, it is apparent that the

2004 Note was made for business expenditures. That deficiency is

ordinarily fatal to a TILA claim. *See St. Hill*, 403 Fed. App'x

at 720. Scotiabank has demonstrated the absence of a genuine

issue of material fact and that it thus is entitled to judgment as a matter of law on Bonita Roy's Second and Third Counterclaims.

To overcome that presumption, Bonita Roy must demonstrate the existence of a genuine issue of material fact. To that end, Bonita Roy has fallen short.

Indeed, in her affidavit, Bonita Roy appears to concede that the 2004 Note was made for business, rather than personal, purposes. She states that "Your affiant firmly believes that Defendant [Gerald Roy], or persons under his control, forged your affiant's signature in order to utilize my name and credit in an effort to maintain the solvency of his businesses." Aff. of Def. Bonita Roy, ¶ 17. Although Bonita Roy unequivocally maintains that her signature on the relevant documents was forged, this does not change the fact that the documents pertain to business, rather than personal expenditures. Thus, they are beyond the ambit of the TILA. *See, e.g.*, *St. Hill*, 403 Fed. App'x at 720. Bonita Roy has not identified or offered any other evidence that suggests any of the proceeds of the 2004 Note were ever used for personal or household expenditures. Thus, Bonita Roy has failed to demonstrate that there is a triable issue with respect to her TILA counterclaims because there is no evidence to suggest that TILA applies to this case.

Case: 3:10-cv-00029-CVG-GWC   Document #: 132   Filed: 02/25/13   Page 37 of 43
Bank of Nova Scotia v. Roy
Civil No. 2010-29
Memorandum Opinion
Page 37

3.   **Violations of the CFDPA: V.I. CODE ANN. tit. 12A, §§ 301-335.**

In her Fourth Counterclaim, Bonita Roy alleges that
Scotiabank has violated the CFDPA. Bonita Roy alleges that "[i]n
connection with the transactions as herein described by
[Scotiabank] in [Scotiabank's Complaint], and as alleged in
[Bonita Roy's] Answer, [Scotiabank] . . . committed consumer
fraud and deceptive trade practices." (Def. Bonita Roy's Answer
17.)

Section 303 of Title Twelve A of the Virgin Islands Code
provides, in pertinent part:

> "Deceptive business practice" means any false, falsely
> disparaging, or misleading oral or written statement,
> visual description or other representation of any kind
> made in connection with the sale, lease, rental, or
> loan of consumer goods or services, or in the
> extension of consumer credit or in the collection of
> consumer debts which has the capacity, tendency, or
> effect of deceiving or misleading consumers.

V.I. CODE ANN. tit. 12A, § 303(e). " 'Consumer' means any person
who purchases or contracts for the purchase of merchandise not
for resale in the ordinary course of his trade but for his use
or that of a member of his household." *Id.* at § 303(d).

As discussed above, in support of its motion for summary
judgment, Scotiabank has submitted the 2002 Commitment Letter,
the 2003 Commitment Letter, and the 2006 Commitment Letter, and
the affidavit of Rogers. These documents and affidavit state

that the Credit Facility was made to RC, a corporation and not a natural person.

The Rogers's affidavit also states that the 2004 Note was intended to finance the business expenses of Gerald Roy and Bonita Roy. This evidence is sufficient to show there is no genuine issue with respect to Bonita Roy's Fourth Counterclaim and that Scotiabank is entitled to judgment as a matter of law on the counterclaim. As commercial loans, they are not subject to the Consumer Fraud and Deceptive Trade Practices Act.

The burden thus shifts to Bonita Roy to show there is some genuine dispute that the loans at issue were for personal or household use. As discussed above, Bonita Roy appears to concede that these loans were for commercial use in her affidavit, as she claims that her signature was forged "in order to utilize my name and credit in an effort to maintain the solvency of [Gerald Roy's] businesses." (Aff. of Def. Bonita Roy, ¶ 17.) Moreover, Bonita Roy has not identified or offered any evidence suggesting that the proceeds of these loans were ever used for personal or household expenditures. Thus, Bonita Roy has not shown any triable issue with respect to her Fourth Counterclaim.

E.   **Jurisdictional Viability of Bonita Roy's Cross-claim**

Bonita Roy also asserts a cross-claim against Gerald Roy for breach of the Mediated Settlement Agreement that concluded their divorce. Specifically, she alleges that Gerald Roy

promised to pay her $700,000 in weekly installments of $600. To secure these payments, he allegedly executed a mortgage in this amount covering the Property.

As noted above, at the November 15, 2011, summary-judgment hearing, the Court *sua sponte* requested that the parties submit briefs addressing whether this Court might exercise jurisdiction over Bonita Roy's cross-claim. Both parties have now submitted their briefs, and argue that there is subject-matter jurisdiction.

Ordinarily, a district court has jurisdiction over only "civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, 424 Fed App'x 82, 83 (3d Cir. 2011) (quoting 28 U.S.C. § 1331) (citing 28 U.S.C. § 1332(a)).

Where a district court is presented with a state law claim between citizens of the same state, it may only decide them if they fall within it supplemental jurisdiction, pursuant to Section 1367 of Title 28 of the United States Code ("Section 1367"). Under Section 1367(a), a Court must exercise supplemental jurisdiction over claims that are "so related to claims in the action with the [district court's] original

Baird v. Burgin
Civil No. 2010-29
Memorandum Opinion
Page 40

jurisdiction that they form part of the same case or
controversy . . . ." 28 U.S.C. § 1367(a).

In determining whether a state-law claim is sufficiently
related to warrant the exercise of supplemental jurisdiction,
courts look to whether that claim and the claims over which the
Court has jurisdiction "derive from a common nucleus of
operative facts." *New Rock Asset Partners v. Preferred Entity
Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting
*United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (internal
quotation marks and alteration omitted); *see also id.* at 1509
(finding that Congress intended to apply the *Gibbs* standard by
enacting 1367).

"Needless decisions of state law should be avoided both as
a matter of comity and to promote justice between the parties,
by procuring for them a surer-footed reading of applicable law."
*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 383 (1988). The
United States Supreme Court has been especially skeptical of
federal-court decisions relative to state domestic-relations
law. It has held that the diversity statute "contain[s] an
exception for certain domestic relations matters," such as
"divorce, alimony, and child custody decrees . . . ." *Marshall
v. Marshall*, 547 U.S. 293, 307-08 (quoting *Ankenbrandt v.
Richards*, 504 U.S. 689, 700, 703, 704 (1992)) (internal
quotation marks omitted).

Here, it is transparently clear that there is no basis for diversity jurisdiction. Bonita Roy and Gerald Roy are citizens of the Virgin Islands. If they were of diverse citizenship, it is likely the domestic-relations exception would apply. Bonita Roy's claim is a straightforward claim for breach of a contract to pay what is tantamount to alimony, and therefore clearly a state-law claim.

The parties argue that the Court should retain jurisdiction because Mediated Settlement Agreement granted Bonita Roy liens over some of the property at issue in this case. Specifically, the assert this may lead to some dispute about the relative priority of Scotiabank's and Bonita Roy's respective liens. However, the issues of the priority of the liens and whether or not Roy breached the Mediated Settlement Agreement are separate and distinct. In the Virgin Islands, a lien attaches and is effective when it is recorded. V.I. CODE ANN. tit. 28, § 258(a). Priority is determined by comparing the dates of recordation of the various liens. *See id.* The Court thus need not make any finding about whether the debt secured by the lien is due or payable in order to determine its relative priority.

Moreover, Scotiabank and Bonita Roy's arguments ignore the fact that the transaction underlying the purported liens is completely separate from and unrelated to the various commercial loans chiefly at issue in this case. The Mediated Settlement

Agreement is also in no way related to the Credit Facility, the
2004 Note, or the 2006 Note. It does not involve Scotiabank in
any way. It was entered into by Gerald and Bonita Roy several
years after the Credit Facility, the 2004 Note, or the 2006 Note
were executed. The Mediated Settlement Agreement also pertains
to a completely distinct subject matter: the resolution of
Gerald Roy and Bonita Roy's Divorce. It has nothing to do with
the Roys' various businesses or any related commercial
transactions. The Mediated Settlement Agreement is simply not so
related to the commercial loans on which Scotiabank seeks relief
that these claims "would ordinarily be . . . tr[ied] . . . all
in one judicial proceeding." *Gibbs*, 383 U.S. at 725.

Accordingly, the Court finds no basis upon which to
exercise supplemental jurisdiction, and Bonita Roy's cross-claim
will be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant summary
judgment in favor of Scotiabank and against Gerald Roy and RC on
its debt claims alleged in Counts I and II of the Complaint. The
Court will deny summary judgment on Scotiabank's debt claims as
against Bonita Roy as alleged in Counts I and II of the
Complaint. The Court will deny summary judgment with respect to
Scotiabank's claims for foreclosure as alleged in Counts I and
II of the Complaint. The Court will grant summary judgment in

favor of Scotiabank and against Gerald Roy and Arches on

Scotiabank's claim for debt and foreclosure as alleged in Count

Three of the Complaint. The Court will grant summary judgment in

favor of Scotiabank and against Bonita Roy on her counterclaims.

The Court will dismiss Bonita Roy's cross-claim. An appropriate

order follows.


                                    S\_____

                                        **Curtis V. Gómez**
                                         **Chief Judge**